Thank you Justice Barbera. May I please report to counsel. We are here today on the DeNovo review. Oh sorry, Jennifer Shaw representing Dean Scott. We are here today on the DeNovo review of a Madison County order granting a motion to dismiss, a petition to allocate a parenting time, and a decision-making petition. The Supreme Court held in Ryan v. Yarbrough 823 NE 2nd 259, a matter is reviewed anew on DeNovo as if the case had never been heard before, as if no decision had been rendered. And you are not constrained by the same mistakes that the trial court made in relying on a meritless argument in basing your decision. This is an interesting case for me in many reasons. I was not trial counsel. I was appellate counsel. I am appellate counsel only. And I was able to look at this a little bit more with a little bit more distance than trial counsel might have looked at a case in preparing an appeal. And as I was looking at this, I realized that this is an issue that is needy both in fact and in law. It is compelling both in fact and in law. And that is one of the things that made it so interesting to me and something that I was very willing to take because of that. At the core, Your Honors, we have a child who is not yet two, who for a third of his life has been denied a relationship with his father. A third of his life has been denied a relationship with his father under color of court order. Denying a parent and child to have a relationship is exactly what the UCCJEA was designed to prevent when we have situations such as these where there are two jurisdictions that could potentially exercise the ability to make decisions for a child. Here, the decision of the Madison County Third Judicial Circuit flew in the face of what the UCCJEA was designed to do. Our Illinois Constitution grants subject matter jurisdiction to all justiciable issues. And the UCCJEA is a limiting force, not a granting force. I think that most family lawyers and most family judges look at the UCCJEA incorrectly. I've been practicing over 20 years and I looked at the statute incorrectly until this case. It wasn't until I really dug into McCormick that I saw the different way of looking at a UCCJEA case. We have to look at jurisdiction in any justiciable matter as an open hallway with doors that could close. And those doors that could close are other statutes that limit jurisdiction. And so we don't look to the UCCJEA to give us jurisdiction to proceed with the matter. We look to see if one of those doors could be open in the hallway. When we're looking at the UCCJEA, there are two sections that come into play when we determine if the doors are opening or closing. It is not the responsibility of the person who is seeking to keep the door open to raise all of those impediments. Ms. Ferraria would have us believe or have you believe that Mr. Scott had to tell the court in his initial petition why the UCCJEA allowed him to have jurisdiction. That is not the way that we look at things. We assume that those doors are open, that we have jurisdiction until someone proves that we don't. And that was her responsibility and her burden in her motion to dismiss to prove that the court did not have subject matter jurisdiction and could not continue to act. We have to look to the statute as a whole when we're making this determination. And so that means that when we first look at Section 201, we read those first few words and they say except as otherwise provided in Section 204. The very first words of Section 201, home state jurisdiction, refer us to temporary emergency jurisdiction. And so we know immediately we have to look at two sections in concert. So first we look to determine if there is home state jurisdiction once the case is closed. And they raised it in their motion to dismiss. There is a question of fact as to home state. There is a question of material fact as to some of the issues that are germane to the Third Judicial Circuit making a determination as to home state. There are issues of material fact there. Dean Scott says one thing. Tarsus says another thing on some very substantial issues. And for those reasons, the fact that there is a genuine issue of material fact, granting the motion to dismiss was improper. But even assuming arguendo, and I will come back to home state jurisdiction because I think really the critical issue here is temporary emergency jurisdiction. This court, even if it thought that it didn't have home state, had an obligation to say, okay, except as otherwise provided in 204, and I don't think I have home state, but I got to go here with the 204, except as provided in 204, do I have temporary emergency jurisdiction? Yes, he did. Judge Althell had temporary emergency jurisdiction. Judge Althell knew. He sits in family court. He has seen many couples have their relationships broken apart for one reason or another. He knows, he knew, we all know, those of us who have been practicing family law, those of us who sit on the bench know that when a couple breaks apart, the likelihood is once they come to court, the court's probably going to have to make a determination, some kind of determination. And the court knew or should have known that once he said I don't have jurisdiction, and he knew that there was nothing sitting in Brazil, he knew that Tarsus had not filed anything in Brazil, he knew that it was going to be a wild, wild west. He knew that somebody was going to have to make a decision about where this child was when. Instead, this child left in March and has not been back. This child left in March. There is nothing pending. This child left in March and has been denied contact with his father. Anything been filed in Brazil? No. To this day, eight months later, nothing has been filed and we can't find the child. We cannot find mom. She is returning all-male. She allows, occasionally she allows there to be FaceTime, but will not say where she is, will not allow anything that's a minute or two and then it's done. But this is a kid who's 23 months old. He can't tell dad where he is. Everything dad has sent has been returned, rejected or returned the wrong address. So we don't know where she is. So at this point, and this is the thing that makes me so, um, I don't know if this is a resolute in my belief that this is the extraordinary jurisdiction and the extraordinary circumstances that Tarsus' counsel talks about in their reply brief, in their response to us. They say, temporary emergency jurisdiction is only to be used in extraordinary circumstances. I would submit to this court that a child being denied a relationship with a parent is exactly the kind of circumstances that would rise to the level of enacting extraordinary jurisdiction. And exactly the sort of fact pattern that the crackers of the UCCJEA and our own, our own legislature adopted. We thought about, they thought about all of those things. What do we want to do? Why do we have this provision here? We have it to prevent harassment and abuse. The Illinois Domestic Violence Act specifically says that harassment is defined as the threat to remove a child from the petitioner's care, to deny, to wrongfully conceal a child and that's exactly what happened here. In Madison County, the circuit court was presented with the situation in the middle of the underlying case when the court said, I need you to brief me on UCCJEA. An order was issued that day and it said, the temporary restraining order remains in effect. Tarsus is prevented from leaving the state of Illinois or the United States. Although we're not sure we have jurisdiction, I'm going to allocate parenting time and I'm going to allocate support. That's exactly what temporary emergency jurisdiction is. It is putting a stopgag in place so that the couple who is broken apart has a conceptual framework. So the child has an understanding, if the child's old enough, the child has set out for him a schedule of time with both parents so that a child does not have to go without seeing either parent. This is not a situation where the other state is Indiana, the other state is Missouri, the other state is California, the other state is Brazil. To get a child back from Brazil, we have to go through the Hague. We may or may not be able to get a child back. Once a child leaves the country and goes into another country like Brazil, they can be sequestered and secreted into a non-Hague country. We don't know. This child was supposed to only be traveling on a U.S. passport. When they left Brazil, interestingly enough, the family was told this child cannot come back in here because he does not have a Brazilian passport. There was an issue about him not having a Brazilian passport and that he was coming here. I think it's very interesting that when plane arrangements were made, the minor child and dad did not have return tickets. Mom had a return ticket, but the minor child and dad did not have return tickets. With respect to Homestay, we believe that the circuit court erred in its decision and did not go through an appropriate 619 analysis. There was a genuine issue of material fact with respect to Homestay. Immediately after the hearing, it was raised to the trial court that Tarsus may have committed perjury and there were witnesses in Brazil who could testify as to that perjury that dealt with her intentions with respect to her residency. That motion to continue was denied. Based upon the fact, and there was a lot of discussion on the record about the fact that Tarsus's tourist visa was going to expire. That's fine. She could go back. There was no reason that the trial court couldn't have said, okay, go back, go back to Brazil, come back. Child stays here. Child could stay here. Child could stay with dad. The trial court knew or should have known at that point that going forward, some jurisdiction, some tribunal was going to have to set some kind of schedule up so that at some points in time John is in the United States, some points in time John is in Brazil. This could have been one of those times that John was in the United States. Trial court could have said, I'm going to take temporary emergency jurisdiction. I'm going to grant the motion to continue. I'm going to allow you to go back to Brazil. During that time, if you think that the Homestay is Brazil, file an action in Brazil and I'll talk to the Brazilian court and we'll make a determination as to what Homestay is at that point. Let me ask you this. Was there any indication from the court that there was a concern for the child's welfare with dad since mom, I think the testimony was that she moved into a shelter, abuse shelter, and I didn't see anything in anything that I read that alleged that there was any physical abuse or sexual abuse or anything of that nature to either mom or the child, but did the court express any concern with leaving the child under your scenario, leaving the child in Illinois with dad while mom went back to Brazil? Really, we'll catch Justice Barberas. The record is completely and wholly devoid of any allegation that Dean Scott abused Tarsus, abused John, or abused Tarsus' other child. The court had zero concern expressed that Dean was a bad actor, that Dean had done anything that would preclude him from having time with the child by himself, would preclude him from being a good parent. There was no testimony made, and in fact, one of the things that the court says on the record, and it's a very short record, and so it's pretty easy to read through, and I believe that my, at various points in our brief, we talk, we point to decisions that are made on the record and soliloquy that is made on the record, and the court says you could be the best mom or the worst mom, it doesn't matter. I have to make sure that I have jurisdiction. I don't think that was absolutely correct. I think for a whole state analysis, sure, when you're just going to see where a child lived for six months, I don't think whether or not you're a good parent, bad parent, whether or not you have been an abuser or a sexual abuser, whether you've enacted any sort of inappropriate behavior on the child or another party, that doesn't matter to the six-month analysis. It doesn't matter to temporary literacy jurisdictions, section 204, but Justice Barrett, at no point did Judge Althoff ever express concern about Dean Scott, not one time. There was no allegation made. The record is devoid not only of testimony, but of pleading and fact. We believe... Good morning, and may it please the Court. My name is Chelsea Nicole Hubbard of Land of Lincoln Legal Assistance Foundation, and I represent the appellee, Tarsis Herrera. Tarsis is a Brazilian citizen who lived in Brazil with her oldest child, LTS. She met Dean online. They started dating, and shortly thereafter, she became pregnant with the child at issue, JS. Tarsis... Clearly, they met sometimes besides online, then. Yes, they did. He came to Brazil, and he came to Brazil 11 times during their courtship, Judge. JS was born in Brazil. That's where the child lived for 11 months. Tarsis then traveled to Illinois with her children. Sometime during her time in Illinois, her relationship with Dean deteriorated. She fled to a domestic violence shelter with her children, and shortly before her tourist visa expired, she went back to Brazil with her children. These are all undisputed facts on the record. The trial court made the correct holding, or found that it lacked jurisdiction to make initial child custody determinations over JS because Brazil, not Illinois, was the home state of JS. I'll first address the issue of emergency temporary jurisdiction under Section 204 of the UCCJEA. Emergency temporary jurisdiction was waived. It was not raised at the trial court level and is first being raised on appeal. Emergency temporary jurisdiction was not discussed or argued at any point within the trial court proceedings or pleadings. Section 204 was not raised in argument, nor in any pleadings, nor at the evidentiary hearing. It was particularly absent as an argument or citation when tasked with preparing a brief on the issue of UCCJEA jurisdiction and given 21 days, the parties did not discuss the issue of emergency temporary jurisdiction. The implication of an argument is not an argument. It was not raised. Moreover, it is an extraordinary jurisdiction that is reserved for extraordinary circumstances. This is not an extraordinary circumstance. Tarsas told Dean she was going home. She said she was going to Brazil, which she always had tickets to do. The appellant has raised the issue of a ticket for the child. Dean admitted at the evidentiary hearing that a ticket, a full price ticket, was not necessary for the child. The child did not need a seat. He could travel as a lap infant. It was never necessary. There was always a return ticket for the child. It was an extraordinary jurisdiction. Had everything gone as planned and they would have utilized the tickets that they had bought, the return tickets, and J.S. could have been a lap passenger on the way back, but isn't there something significant and extraordinary in this case where a mom leaves and takes the child to a shelter and conceals the child from the father and has the ability, as you just pointed out, to go back not only to a different state, but to outside the U.S.? Does that make that fall into a bit more extraordinary circumstance than somebody going from Edwardsville to St. Louis? No, Your Honor, it is not an extraordinary circumstance. She merely left the residence where she was. He found her and was able to serve her with these pleadings shortly thereafter, within, I think, two days of her leaving the household. It's not that he didn't know where she would be as she prepared to leave the country back to go home to Brazil. It's not an extraordinary circumstance because he also knew where she lived, where she worked. He had been there. He had been and spent time, weeks at a time, with her in Brazil. Wasn't there testimony that she gave up her residence in Brazil when she came back to Illinois, or came to Illinois? Dean provided that testimony and the court found it that Tarsus' testimony on that matter was credible, Your Honor, in weighing those facts and considering the testimony of both Dean and Tarsus. So she testified that she still had a residence in Brazil? That is correct. Not that she had a lease there and that the lease was through 2019. But more than the extraordinary circumstances, the court is looking to harm to a child, not harm to Dean and his rights as a parent. In effect, the court's order did not actually deny Dean anything. He still has recourse and relief should he file anything in Brazil. And the account is incorrect. Tarsus has filed custody proceedings in Brazil and is trying to have Dean served. She is responding to phone calls and communicating with him throughout this entire process. The child is young and has limited ability to speak on the phone, but there's nothing preventing him from going to Brazil, as he had done many times before, to visit with the child. But what do you mean trying to have him served? Is that successful? It's in the process of service, Your Honor. It's international service to have Dean proceed with that. She has an attorney within Brazil to represent her in that matter. So there's a case number in Brazil somewhere? Yes, that has never been given. I mean, to your knowledge, does those attorneys know that? Your Honor, I believe that they have been aware. We represent her in this matter rather than in that other matter. However, they now know, as we're discussing it here, and he has every opportunity even to bring his own lawsuit on his own behalf to serve his parental rights in Brazil. That is what the court found. He did not deny Dean any relief or to be a parent of J.S. The court simply found that it did have the ability to maintain the status quo to review the extent of its own jurisdiction here, but after finding that it lacked that jurisdiction because we did have a home state, it instead allowed Brazil to make those determinations. And Dean still has that opportunity. Are you aware of when that case in Brazil was filed and opened? Your Honor, it would be since March is when she returned, and it would have been within these past months. Okay. So it wasn't, nothing had been filed at the time she left? Nothing had been on file that the court was aware of or maybe was unaware of at the time it made its decision to dismiss the motion? That's correct, Your Honor, because she had been here within Illinois and the relationship with Dean deteriorated in Illinois and she was prevented from going back to Illinois until the court reviewed the extent of its jurisdiction. But more than that, the issue of emergency temporary jurisdiction looks at harm to the child. J.S. was never in danger. That's why J.S. remained with Tarsus. Tarsus, there's no facts supporting that there was abandonment of J.S. as contemplated by the statute or that he was at risk of abuse or mistreatment. There was no emergency. The court did not need to act. It merely maintained the status quo to help a non-citizen have support as she was unable to work or support herself as it reviewed the extent of its jurisdiction. More than that, temporary emergency jurisdiction is just that, temporary. The court only has the power to exercise that jurisdiction until commencement of a case in the child's home state, at which point it shall begin communication with that state to resolve not just the emergency, but to allow that court to then begin making initial child custody determinations over a child, because that is how the UCCJA is structured. It's meant to give priority to the home state because it is best positioned to make decisions about a child. That framework is set forth in Section 201 and it first looks to whether Illinois is the home state of the child. Then it looks to whether there's another state that is the jurisdiction that is the home state of the child. Finally, if there is no home state, it will look to another way to analyze the situation to determine which jurisdiction is the best one to make decisions about a child, such as through a substantial connections test or significant connections test. The court here properly analyzed that according to that framework set forth by the statute. Both parties had conceded, uncontested, that Illinois was not the home state of the child. The child had not lived here for the requisite amount of time. Further, both parties also had stated within their briefs that Brazil was the home state of the child through September 2017 at the time that he traveled to Illinois. That was also uncontested. How old was he at that time? The child was 11 months at that time, Your Honor. At that point, the jurisdictional analysis should properly end because we have a home state of the child. More than that, we don't need to get to any type of significant connections because, again, that only is reached when we have no home state. The material facts were undisputed. There were additional facts, as is common to determine jurisdiction, which depends greatly on facts, and those facts were elicited through an evidentiary hearing. The standard of review is not de novo for those factual findings. Rather, Midwest LEM Enterprises v. Newman is the case that sets forth the standard that when we're reviewing factual findings from an evidentiary hearing that were presented to decide on a motion to dismiss, those factual findings should be upheld by the appellate court unless they are against the manifest weight of the evidence. The appellate has mischaracterized or misread that case and said that it only involves a voluntary dismissal. Rather, that case actually considered several different motions to dismiss in the case at that bar, and there had been analysis on a voluntary motion to dismiss filed by the plaintiff, but it also contained analysis of a motion to dismiss that was filed by Mr. Newman, the defendant, and that's where we get the rule about the evidentiary hearing because the evidentiary hearing was only held not on the voluntary dismissal, but specifically on the one that Mr. Newman filed, and that court sets forth that when there's an evidentiary hearing, we use the manifest weight of the evidence standard to decide whether the factual findings of the trial court should be upheld. The cases that are cited by the appellant in their reply brief are not on point. None of them discuss a situation or case where there was an evidentiary hearing held at the trial court level. They instead recite that conclusions of law and questions of law are given the de novo standard. We agree. We say that questions of law and conclusions of law should be given that de novo standard of review. However, when we're talking about the factual findings, we trust Judge Alfeld's years at the bench, making decisions on family cases. He listened to the parties, considered their testimony and their credibility, and found that Karsas was credible, that she did not have plans to remain within Illinois, that there was no facts that supported that she was leaving her son, John, in Dean's care when she would return back with her oldest son, LCS, as she was required to do, to Brazil. There's nothing within the record that supports that the factual findings of the trial court should be given anything but deference, unless they are against that manifest weight of the fact that a court could have allowed the mother to go back to Brazil and then come back to the states and keep the child in Illinois until dad had the opportunity to call his witnesses that he wanted to call concerning mom's true intentions about where she was going to reside after she came to Illinois for the first time. The evidence and witnesses that Dean wanted to bring from Brazil to make a decision, for this matter, were raised after the appellate court already had taken jurisdiction. He did mention that he wanted to bring an immigration attorney that he had consulted himself, but that wouldn't go to Karsas' intent, that's his attorney. But those issues about witnesses being brought from Brazil were raised after this appellate court took jurisdiction and the trial court no longer had jurisdiction to permit any witnesses or further stay. Not only that, but it again goes to the point that if the evidence and witnesses on this matter are in Brazil, Brazil is the proper court to determine this matter. The child would not also, it would not be appropriate for the child to remain within Illinois when the court of Illinois lacked jurisdiction over this matter. There was no emergency temporary jurisdiction to protect J.S. from going home when the parties had already put forth undisputed facts that Brazil had been the child's home and that Illinois was not the child's home. There was no emergency to keep J.S. here and there still remains no  We're asking that the court affirm the trial court ruling and giving deference to the factual findings that were elicited at the evidentiary hearing, unless they are against the manifest weight of the evidence, and deciding all other matters for questions of law under the de novo standard. Unless there's any other questions. I apologize. As one further thing, the Illinois Domestic Violence Act was never raised with any of the pleadings or within the hearings of the court. And moreover, if the court was deciding this under UCCGAA, it was never raised that they should refer to that statute as any sort of standard for reviewing any type of emergency in this matter. And the appellant mischaracterized it. The definition of harassment requires repeated threats and a wrongful concealment that would, and it makes an exception for when someone is fleeing an issue of domestic violence. Thank you. Counsel. Interestingly enough, I'm going to start where she stopped, which is the Illinois Domestic Violence Act. It was referenced in our brief to talk about what harassment has traditionally been defined by in Illinois courts. It would be lovely if when we are in the trial court, we had the ability to just pause life, pause time, and do a little research on LexisNexis and come back with, oh, there's a case out here that says this. We never know exactly what's going to happen when we put a case to trial. Dean did not expect Tarsus to lie on the stand. He asked for additional time to bring witnesses to the motion to reconsider hearing to prove that she lied. It would have been lovely had he known ahead of time that she's going to lie and I'm going to go find the witnesses who can prevent that. Again, she's in Brazil. It's not like we're going to St. Louis, as you had discussed. We had to go to Brazil to get those witnesses here to talk about the perjury. Not an easy feat. So he was just asking for short-term continuance to hear the motion to reconsider so those witnesses could be present. So it's a bit of a mischaracterization to say that the motion to consider was inappropriate or the motion to continue was appropriately handled. It was not... Well, the court didn't get to the merits on any of that because it found that it didn't have jurisdiction because it was already... Actually, that's incorrect. Procedurally, there was a decision on, at the beginning of March, that said we have no jurisdiction. A motion to reconsider was filed and set for hearing. There was a motion to continue the hearing on the motion to reconsider. That was the motion to continue that we are discussing. That was when he sought to bring witnesses. He sought to bring witnesses to that motion to reconsider hearing. And so the court did have jurisdiction. The appeal had not been taken at that time. The notice of appeal was filed after that motion to reconsider had been heard and it was a fairly interesting case. And when you read it, and I anticipate that the court has read it, that is a case that took multiple months. That is a case that had multiple counts. There were multiple counts that were multiple procedural motions filed. And in Midwestern, when the court is discussing and it's holding a de novo versus manifest weight standard, it truly is only to that portion that had to do with the voluntary motion to dismiss. That is what takes up a bulk of the hearing, a bulk of the opinion. But I will go on. I believe that the court can make a determination for itself with the cases as to the de novo review or the manifest weight. We submit that it is, in fact, de novo review. I think it's really critical to think about whether or not the case is de novo review, whether or not there was waiver. There wasn't. Again, it would be lovely if we could just pause reality when we're trying a case, run over to Google, run over to Lexis and come back and say, oh, but, but, but. That's exactly what happened in this case. This case was really fast-tracked, as you can tell. Filed in January, disposed of by the middle of March. It was on a train that was not stopping. Repeatedly, repeatedly emergency was pled in this matter. From the time this case was filed, there was a temporary restraining order immediately issued upon this case being filed. And in that restraining order, the court found, specifically, these are the words, the child will suffer irreparable injury which may not otherwise be remedied. And the basis of this is that this child was going to be sequestered and secreted to Brazil. This was an allegation from day one. Dean Scott pled emergency from day one. And the court, I submit to you, took emergency jurisdiction from day one. Not only that, what I think is really, really interesting is that at no point does Tarsus even today say, I didn't make that threat. I didn't make that threat. I didn't say that. I didn't do that. I didn't wrongfully conceal this child. We never hear that she didn't do it. It's uncontroverted. Again, this goes to the deference that has to be paid to Dean's pleadings on a motion to dismiss. All inferences have to go to the non-moving party. But there's no inference to be made that she at no point says, didn't do it. And at no point does the third judicial subpoena say, we didn't believe it. Thank you. The court will take the matter into consideration and issue a ruling in due course.